STEPHEN W. HARMON *vs.* MARY E. OSGOOD.

Suffolk.    March 10, 1890. — May 16, 1890.

Present: FIELD, DEVENS, W. ALLEN, HOLMES, & KNOWLTON, JJ.

*Trustee Process — Administrator — Gift inter Vivos — Donatio Causa Mortis
— Scire Facias.*

A gift was made by a debtor of the balance of her estate after the payment of
funeral expenses. A creditor, after her death, commenced a trustee process
against her administrator, and summoned the donee as trustee, and, judgment
being rendered by default and the trustee charged with the administrator's con-
sent, brought *scire facias* against the trustee. *Held*, that the trustee was properly
charged, and that the *scire facias* would lie, whether the gift was *inter vivos* or
*causa mortis.*

SCIRE FACIAS against the defendant, as trustee in a trustee
process brought by the plaintiff against William H. Swift, ad-
ministrator of the estate of Ann McLean, deceased. The case
was submitted to the Superior Court, and, after judgment for
the defendant, to this court, on appeal, on agreed facts, in sub-
stance as follows.

In the summer of 1886, Ann McLean, who had lived as a ser-
vant in the defendant's family for several years, having become
ill, handed to the defendant six hundred and sixty dollars, say-
ing : " You take this money. When I die, bury me, and keep
the rest, because you are the only woman who has ever been
kind to me." The defendant received the money, and, at vari-
ous times before and after the intestate's death, paid out of the
fund various sums for the expenses of the intestate's illness and
burial, amounting in all to two hundred and sixty-five dollars,
leaving a balance of three hundred and eighty-five dollars in her
hands, which she claimed as a gift from Ann McLean, and as a
payment for her services in attending to her burial and illness.
William H. Swift was appointed administrator of the estate of
Ann McLean, but no funds belonging to her came into his hands,
although he had made diligent search for the same, and none to
his knowledge existed except the balance of the fund remaining
in the hands of the defendant. The intestate was indebted to
the plaintiff for professional services, and he commenced a trus-

tee process against the administrator to recover for the same, and summoned the defendant as trustee, and judgment was rendered, with the administrator's consent, in his favor in that action, whereupon he brought this *scire facias.*

*S. W. Harmon, pro se.*

*J. M. Hall,* for the defendant.

HOLMES, J. This is *scire facias* against an alleged trustee. We are to assume that the original defendant's intestate, one Ann McLean, was indebted to the plaintiff for professional services, and, being so indebted, made a gift of six hundred and sixty dollars, which was all her property, to the present defendant, saying : " You take this money. When I die, bury me, and keep the rest, because you are the only woman who has ever been kind to me." It is not material whether this gift was a gift *inter vivos* or *causa mortis.* Whichever it was, we must take it to have been void as against the plaintiff, at least with regard to the excess over funeral and other expenses. There is no warrant for the suggestion that it was paid as consideration for an absolute undertaking by the present defendant to pay these expenses whether the fund was sufficient or not. The only question, assuming it to be open, is whether the money can be reached by the plaintiff in this way, that is, by a suit against the administrator, and a trustee process against the donee. We are of opinion that the money can be reached in this way, and that the trustee must be charged.

It is objected that the administrator could have recovered the fund so far as necessary to pay debts (*Holland* v. *Cruft,* 20 Pick. 321, 328, *Mitchell* v. *Pease,* 7 Cush. 350, *Chase* v. *Redding,* 13 Gray, 418, *Pierce* v. *Boston Five Cents Savings Bank,* 129 Mass. 425, 433), and that he is the only person entitled to do so. The objection seems to apply partly to beginning any action against an administrator by trustee process, and partly to the use of the process in this particular class of cases. The more general objection is based on the danger of a creditor obtaining a preference to which he is not entitled ; *Lyons* v. *Houston,* 2 Harringt. (Del.) 349 ; *Fisher* v. *Lane,* 3 Wils. 297 ; and on the absence of explicit statutory provisions. See *Bryant* v. *Fussel,* 11 R. I. 286. But to this it may be answered, that the danger is no greater than in the case of an ordinary attachment of the goods and

Mass.]         HARMON v. OSGOOD.         503

estate of the deceased in an administrator's hands, which is expressly allowed by the Pub. Sts. c. 166, § 5, and that, in fact, the danger does not exist under our statutes. For the administrator may represent the estate insolvent, and then the creditor, even if he is allowed to proceed to judgment, cannot have execution, but must present his judgment for allowance like other claims. Pub. Sts. c. 157, § 33. There is no more reason that the goods, effects, and credits of a deceased person should not be trusteed, than that his goods and estate should not be attached. The statute assumes the right to make ordinary attachments to exist, rather than purports to create it. Unless, therefore, the statutes exclude the construction, a similar assumption should be made with regard to trustee process.

It is provided that "all personal actions . . . may be commenced by trustee process," with certain immaterial exceptions. Pub. Sts. c. 183, § 1. When the trustee has "goods, effects, or credits of the defendant" in his hands, they are attached by the summons "in like manner as goods or estate attached by the ordinary process." Pub. Sts. c. 183, § 21. The generality of the words first quoted is broad enough to include actions against administrators. The language last cited shows that trustee process is only a form of attachment, which would not be denied. The words "of the defendant" create no difficulty, because goods, effects, or credits belonging to the estate are property of the defendant in the character in which he is sued, as is shown by the provision in a section already referred to, that executions shall not run against the bodies, goods, or estate of executors or administrators, but "only against the goods and estate of the deceased in their hands." Pub. Sts. c. 166, § 5. The word "only" here does not exclude goods in the hands of a trustee, but is used *alio intuitu*, to exclude goods belonging to the administrator. The provision allowing executors and administrators to be trusteed is something of an indication that the Legislature did not intend the ordinary remedies to be cut off by death. Pub. Sts. c. 183, § 22. And if decisions upon the custom of London throw any light upon the matter, it appears that, when an administrator was sued for a debt due from the deceased, a debt due to the deceased could be attached. Com. Dig. *Attachment*, (D).

We may add, that the possibility of there being other debts is only to be considered here as bearing upon the construction of the statutes. As the administrator has not represented the estate to be insolvent, and has consented to the plaintiff's recovering from the present defendant, we are not to assume them to exist, and if they do exist, and our view of the law is correct, they are no concern of the defendant.

It seems to us, then, a reasonable construction of the statutes, that a suit against an executor or administrator can be begun by trustee process. If this be so, we think it tolerably plain that, when a conveyance of property is void as against creditors, the property conveyed can be attached in this way. In suits against the fraudulent grantor or donor personally, since the conveyance is void as against creditors, the property can be reached as being still his property, either by an ordinary attachment, (*Sherman* v. *Davis*, 137 Mass. 132, *Pratt* v. *Wheeler*, 6 Gray, 520, 523,) by the Pub. Sts. c. 161, § 66, or by trustee process. Pub. Sts. c. 183, § 26. There can be no doubt that it could be attached in a suit against an administrator. If the trustee process is available at all, there seems to be no reason why it should not be made use of in this case. The language of § 26, " goods . . . of the defendant which he [the trustee] holds by a conveyance or title that is void as to the creditors of the defendant," is broad enough to include executors and administrators on the principle already explained in speaking of § 21. We think that the statutes should be construed liberally upon the question before us, in view of the general policy which allows attachments in such suits.

The counsel for the defendant seems to consider that a *donatio causa mortis* stands on a different footing from a fraudulent gift. There is no doubt that the statement that a *donatio causa mortis* is subject to debts is coupled in some of the older books with references to the Roman law, where such gifts are likened to legacies. *Tate* v. *Hilbert*, 2 Ves. Jr. 111, 120. Possibly cases might arise, although they are hard to imagine, in which it would make a difference whether the priority of creditors was based upon the gift being construed like a legacy, or upon its being fraudulent as to them. But this gift, whatever it may be called and however innocently intended, was plainly void as against the

plaintiff in point of law, being a gift of all the donor's property in terms which entirely ignored the plaintiff's claim. *Pierce* v. *Boston Five Cents Savings Bank*, 129 Mass. 425, 433. *Chase* v. *Redding*, 13 Gray, 418, 420. *Mitchell* v. *Pease*, 7 Cush. 350, 353. *Smith* v. *Casen*, 1 P. Wms. 406.

*Judgment for the plaintiff.*